UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                          Plaintiff           Honorable Denise Page Hood

-vs-

JOLYAN RAEED ZAHRAH,                Case No 2:25-cr-20470

                          Defendant

                                  /

**DEFENDANT'S RESPONSE TO HOLD BOND HEARING IN
ABEYANCE AND FOR ORDER COMMITTING DEFENDANT
TO THE CUSTODY OF THE ATTORNEY GENERAL FOR A
PSYCHOLOGICAL EVALUATION [ECF No 26 PAGE ID 64]**

I.

The government acknowledges this Court previously denied the substance of their present request [ECF No 26 Page ID 67]. In essence, they desire reconsideration. However, their pleading does not conform to local court rules.

LCrR 12.1 (a) provides "[m]otions in criminal cases shall be filed in accordance with the procedures set forth in LR 7.1." In turn, LR 7.1 (h) (2) advises Motions for reconsideration…are disfavored." As movant, the government must demonstrate "[t]he court made a mistake…." LR 7.1 (h) (2) (A); there was "[a]n intervening change in controlling law…." LR 7.1 (h) (2) (B); or "[n]ew facts

1

warrant a different outcome and the new facts could not have been discovered with

reasonable diligence before the prior decision" LR 7.1 (h) (2) (C).

Yet, the government neither references nor demonstrates compliance with

any of these mandatory criteria.

> Plaintiff presents arguments outside of the grounds permitted for filing a motion for reconsideration, which are "disfavored" by this Court. *See* ED Mich L.R. 7.1(f)(h)(2)(permitting motions for reconsideration only on the following grounds: mistake, an intervening change in controlling law, or new facts warrant a different outcome that could not have been discovered with reasonable diligence before the prior decision). Plaintiff does not identify any mistake, or change in the law or facts as required by ED Mich L.R. 7.1(f)(h)(2). Rather, he regurgitates previous arguments already presented in his previous filings. "Motions for reconsideration are not an appropriate forum for rehashing previously rejected arguments ...." *Cisse v Gonzales*, 255 F App'x 971, 975 (6th Cir 2007). *Williams v Crystal Flash Co*, 2025 WL 2463149 * 6 (ED Mich 2025).

Accordingly, their motion should be summarily denied, *see, e g, United*

*States v Savage*, 99 Fed Appx 583, 585 (6th Cir 2004); *Williams v Crystal Flash*

*Co*, *supra*, 2025 WL 2463149 at * 6.

<u>II</u>.

Although the government spills considerable ink pertaining to

competency hearings and proceedings relative to criminal responsibility [ECF No

26 Page ID 64-72], we trust the instant record will *accurately* reflect the *only*

defense request presently before the Court is for Revocation of Detention Order,

[ECF No 31 Page ID 106].

Significantly, we have *not* alleged JOLYAN RAEED ZAHRAH is incompetent or lacks criminal responsibility. To the best of the writer's recollection, during a Pretrial Conference conducted on or about February 10, 2026, in advising the Court as to the status of Dr Gerald Shiener's evaluation of Mr Zahrah, counsel indicated it appeared your Defendant may be autistic.

Subsequently, during another Pretrial Conference held on or about May 14, 2026, counsel advised Dr Shiener's report was nearly complete and the Defendant appeared to be autistic and may also be incompetent as well as lack criminal responsibility.

Dr Shiener's report has been filed with the Court *under seal* [ECF No 31-2 Page ID 127]. Contrary to governmental apprehensions [ECF No 26 Page ID 67-68], currently our *sole* intention is to secure Jolyan's release from custody.

While the government desires to conflate issues of mental health [ECF No 26 Page ID 64-65] with pretrial detention rubric [ECF No 26 Page ID 66], the analyzes for these two (2) concepts are separate and distinct.

> [T]the district court erred to the extent that it based its competency determination on its concern with Hoskie's future dangerousness. The statutory framework clearly separates the competency determination, provided by 18 USC § 4241(a)-(c), from the temporary commitment procedure provided by 18 USC § 4241(d), and the procedures for indefinite commitment of dangerous incompetent persons provided by 18 USC § 4246. No doubt we all share the district court's concern that Hoskie not be allowed to repeat his brutal crime. Nevertheless, the difficulties he may pose because of his incapacity to control himself or his likely future dangerousness have no place in our consideration of

3

whether he is competent to stand trial. *United States v Hoskie*, 950 F 2d 1388, 1394 (9th Cir 1991).

With due respect, the propriety of pretrial detention is not merely predicated upon the mental health of the accused, but rather, whether he "presents an *unmanageable* risk of danger….," *United States v Johnson*, 819 F Supp 3d 1276, 1279 (MD Ala 2026) (emphasis added).

> [I]n determining whether there is a "condition or combination of conditions [that] will reasonably assure ... the safety of any other person and the community," 18 USC § 3142(e)(1), the court now considers the above four factors from the perspective of a totality of the circumstances. The court is convinced that, while the charge against Johnson is quite serious and while his conduct at the time he was arrested is very concerning, his conduct appears to be the further product of the "lifelong nature of [his] Intellectual Disability," and his intellectual deficits, which likely influenced this behavior, can be managed "within a structured and supportive environment." Lokken Competency Evaluation (Doc. 29-1) at 2. In other words, his "risk profile" is still "best conceptualized as one of functional vulnerability rather than dangerousness," that is, not "traits associated with predatory or intentional violence," *id*, and thus his "likelihood of engaging in dangerous behavior in the community [would] remain low" if--and the emphasis should be placed on if--he has appropriate supervision, mental-health treatment, and substance-abuse treatment. *Id* at 3. The court believes that it can impose conditions that meet these requirements and thereby "reasonably assure ... the safety of ... the community."  18 USC § 3142(e)(1). These conditions include home detention, location monitoring, and the treatments identified in Dr. Lokken's report.
>   These conditions will reasonably protect the safety of the community by ensuring that his whereabouts are always known, that he is restricted as to where he can go, and that, as a person with significant intellectual impairments, he receives the habilitation necessary to function in society as a law-abiding citizen. The government has not shown otherwise by clear and convincing evidence. *Id* at 1280-1281 (footnotes omitted).

<u>III.</u>

The government would have this Court believe it *must* commit Jolyan for its requested competency evaluation [ECF No 26 Page ID 70]. Because their position is neither warranted nor mandated by applicable jurisprudence, we respectfully object.

> It is well-established that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Jones v United States,* 463 US 354, 361, 103 S Ct 3043, 77 L Ed 2d 694 (1983) (quoting *Addington v Texas,* 441 US 418, 425, 99 S Ct 1804, 60 L Ed 2d 323 (1979)). More to the point, "where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States v Abuhamra,* 389 F 3d at 322." *United States v Magassouba*, 544 F 3d 387, 407 (2d Cir 2008).

A prime example of the fallacy of the government's advocacy was adjudicated in *United States v Song*, 530 Fed Appx 255 (6th Cir 2013). After the defendant was "released….on…bail," *Id* at 256, he "filed a notice of intent to raise the insanity defense," *Id* at 256.

Subsequently, the District Court conducted a brief hearing, at the conclusion of which it "order[ed] Song to self-surrender to a BOP facility for a custodial mental health examination;" *Id* at 256. The Sixth Circuit "vacate[d] the district court's commitment order and remand[ed]…," *Id* at 261.

> We review a district court's decision to order a custodial mental health examination pursuant to 18 USC §§ 4241 and 4247(b) for an abuse of discretion. *See* 18 USC § 4247(b) ("For the purposes of an examination

pursuant to an order under section 4241, ... the court *may* commit the person to be examined for a reasonable period, but not to exceed thirty days.") (emphasis added); *Deters,* 143 F 3d at 579 ("The district court ... has the discretion to confine a defendant during the examination period."); *United States v Neal,* 679 F 3d 737, 740 (8th Cir 2012) (same); *cf United States v Banks,* 482 F 3d 733, 743 (4th Cir 2007) ("We defer so to the district court because it is in a superior position to adjudge the presence of indicia of incompetency constituting reasonable cause to initiate a hearing [pursuant to 18 USC § 4241(a) ].").

\*                                          \*                                          \*

In support of his position that the mental health examination must be performed on an outpatient basis, Song [persuasively] relies on *Newchurch,* 807 F 2d 404, and *Neal,* 679 F 3d 737, cases that address the question presented here.

In *Newchurch,* the Fifth Circuit vacated a district court order committing a defendant to the custody of the Attorney General for a custodial examination because "[t]he government offered no evidence that the commitment of Newchurch ... is necessary or that an examination adequate for determination of his sanity ... cannot be conducted on an outpatient basis or by a confinement of short duration in a hospital near the place of trial." 807 F 2d at 410. *Newchurch* reasoned, "a district court should not exact such a deprivation of liberty" unless there is "some evidence that commitment is necessary." *Id.* To that end, the Fifth Circuit concluded, "the district court should make findings of fact concerning the need for commitment to the custody of the Attorney General." *Id* at 412.

The Tenth Circuit in *Deters,* 143 F 3d 577, resolved the question likewise. The court in *Deters* held, "In ordering commitment pursuant to 18 USC § 4241, a 'district court should make findings of fact concerning the need for commitment,' and '[a]n appellate court should give appropriate deference not only to these findings but also to the conclusion reached by the district court' regarding the appropriateness of confinement." *Id* at 584 (quoting *Newchurch,* 807 F 2d at 412). In *Deters,* unlike this case, the district court actually held an evidentiary hearing, discussed on the record the defendant's request that she be evaluated on an outpatient basis, and then made factual findings identifying two governmental interests—the risk the defendant would not appear at trial and the defendant's unstable living conditions—which justified the custodial examination. *See id* at 583–84.

The Eighth Circuit recently adopted the Fifth Circuit's approach in *Neal.* The *Neal* court explained that the failure of the district court to "require the government to present evidence to justify the inpatient commitment, seriously consider the defendant's alternative request for an outpatient examination, or make findings of fact concerning the need for commitment," necessitated remand. *See Neal,* 679 F 3d at 741–42. In the absence of such factual findings, the court concluded it was left unable to determine whether the district court's order satisfied due process. We face a similar circumstance in the case at bar. *Id* at 259-260.

In fact, a *non-custodial* competency evaluation was conducted in the case cited by the government, *United States v Whelan*, 2026 WL 6390670 * * 102 (ED Wis 2023) [ECF No 26 Page ID 72][1].

Furthermore, the procedure utilized by the Honorable George Caram Steeh, United States District Court for the Eastern District of Michigan, in *United States v David Ayoub,* Case No 11-cr-20090, is enlightening. After Mr Ayoub was released on bond [ECF No 8 Page ID 25], Pretrial Services petitioned for him "to undergo a mental health assessment and counseling, as directed by [it]" [ECF No 12 Page ID 37].

---

[1] The government desires to portray Dr Shiener as a charlatan [ECF No 26 Page ID 72]. The *sole* example provided by them—as opposed to their purported "*[m]ultiple* federal courts…[on *numerous* occasions critiquing]" the opinions of Dr Shiener [ECF No 26 Page ID 72 (emphasis added)]—merely demonstrates "[t]he Court [found] Dr Shiener's opinions and testimony [not surprisingly] less persuasive [than that of a *jointly* recommended psychologist]," *Id* at * * 1, 6.

As a corollary, BOP personnel are not infallible, as even "the Government was concerned with the veracity of the evaluation process [performed by one of their prison psychologists], *see, e g, United States v Zhou*, 428 F 3d 361, 379-380 (2d Cir 2005).

After the defense presented a written report by a privately retained psychologist opining the accused "incompetent to stand trial *at this time*" [ECF No 18 Page ID 47 ¶ 1 (emphasis added)], the government moved for their own examination [ECF No 18 Page ID 49 ¶ 7].

Significantly, the Court granted this Motion, directing "[t]he examination shall take place at the *office* of [the government's suggested psychologist]" [ECF No 19 Page ID 61 (emphasis added)].

Accordingly, if the Court is inclined to order another competency evaluation, we respectfully request, in the sound exercise of its discretion, the same transpire in a non-custodial setting, *see*, *United States v Song*, *supra,* 530 Fed Appx at 256-261.

IV.

We are cognizant the government alleges "there is no wait time" for their requested evaluation [ECF No 26-2 Page ID 76]. What the government does not advise, however, is how long it would take the United States Marshal Service to *transport* Jolyan to the designated facility, how much time the evaluation itself would encompass, how much time would be expended in preparing and submitting their report to the Court and the amount of time the United States Marshal Service would necessitate in returning him to this district, *see*, *United States v Lathan,* 2023 WL 2523299 * 3 (6th Cir 2023) ["the [BOP competency] report addressed

the *four* months that had elapsed since the district court ordered the evaluation"

(emphasis added)].

With due respect, this writer's recent experience[2] is consistent with the

Court's previous observation the entirety of their proposed [ECF No 26-2 Page ID

76] process would encompass several months, creating unwarranted and

unnecessary due process, *see generally*, *Disability Law Center v Utah*, 180 F Supp

3d 998, 1005-1012 (D Utah 2016), *and* speedy-trial concerns, *see, e g*, *United*

*States v Berard*, 671 F Supp 3d 107, 112-114 (D NH 2023).

---

[2] In *United States v David Richard Guilds,* United States District Court for the Eastend District of Michigan, Case No 25-cr-20919, it appears an Order for Competency Evaluation was entered on or about July 2, 2025 [ECF No 17 Page ID 29]. Upon information and belief, Mr Guilds did not arrive at the designated institution until on or about August 25, 2025, nearly two (2) months *later*. Due to governmental irregularities, the report was not submitted to the Court until on or about October 30, 2025. Another two (2) months of incarceration. An adjudication of competency did not transpire until on or about April 1, 2026. The entirety of this process resulted in the incarceration of Mr Guild's for approximately ten (10) months.

<u>RELIEF REQUESTED</u>

WHEREFORE, the Defendant, JOLYAN RAEED ZAHRAH,

respectfully prays this Honorable Court Deny the government's motion.


Respectfully submitted,

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: June 5, 2026.

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff          Honorable Denise Page Hood

-vs-

JOLYAN RAEED ZAHRAH,                   Case No 2:25-cr-20470


                    Defendant
_____/


CERTIFICATE OF SERVICE


ARTHUR JAY WEISS, counsel of record for JOLYAN RAEED

ZAHRAH, the Defendant in the above-entitled matter, hereby Certifies that on

the 5th Day of June, 2026, he served all counsel of record with a copy of

Defendant's Response to Hold Bond Hearing In Abeyance and for Order

Committing Defendant to the Custody of the Attorney General for a Psychological

Evaluation [ECF No 26 Page ID 64] and Certificate of Service relative to the

above-entitled matter *via* electronic means.


1

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS